PETROPLUS, JUDGE:
The Claimant is Southern Realty Company, Inc., a West Virginia corporation, which on June 20, 1966, acquired a parcel of real estate in Sutton, Braxton County, West Virginia, which had formerly been leased to the State of West Virginia for the use of the West Virginia Department of Welfare. The property was conveyed to the Claimant subject to the terms and conditions of said Lease and the rental of $125.00 per month, payable on the 1st day of each month, was to be paid to Southern Realty Company, Inc., Claimant, at its address, Box 666, Sutton, West Virginia, from and after the date of purchase, all *14 of which appears in Respondent’s Exhibit No. 1, designated Certification of Approval, signed by the Southern Realty Company and Truman E. Gore, Commissioner of the Department of Finance & Administration.
The Lease in question is dated February 9, 1966, by and between C. A. Duffield, Jr. (the former owner) as Lessor, and the State of West Virginia, by the Commissioner of Finance & Administration, as Lessee. The relevant provisions of the Lease are as follows:
The term was for a period of 4Vi months beginning February 15, 1966, and ending on June 30, 1966. The Lessee was granted an option to renew the Lease for a period of three additional one-year periods upon giving written Notice to the Lessor, at least, 30 days prior to the end of the leased period of its intention to so renew said Lease. The rental was stipulated at $125.00 per month, and it was agreed by and between the parties that the Lessee may, at any time, upon giving 30 days’ written Notice, terminate the Lease, and upon pre-delivery of possession of the premises to the Lessor, the Lessee was to be relieved from any and all liability thereunder. It was further agreed by the parties that Notices in the Lease were to be given by personal service upon the parties entitled to such Notice, or by certified mail, duly stamped and directed to the last known address of the party to be notified and deposited in the postoffice so as to allow 5 days for delivery.
The Claimant contends that the Lessee, Respondent, refused to pay rent after November 15, 1968, while holding as a tenant under the third optioned period which would have expired on June 30, 1969. It is further contended that the Department of Welfare continued to occupy the premises after November 15, 1968, and prevented the Claimant from leasing said premises to another tenant. The rental claim is in the amount of $1125.00, covering a period of 9 months beginning on December 1, 1968.
It was clearly established by testimony at the hearing that by letter dated October 8, 1968, signed by Joseph C. Peters, Commissioner and addressed to Southern Realty Company, Inc., Post Office Box 666, Sutton, West Virginia, 26601, the Lessor was notified that in accordance with the terms of the Lease dated February 9, 1966, that the premises will be vacated and the Lease terminated as of midnight November 15, 1968. The Respondent placed in evidence (Exhibit *15 No. 3) the envelope in which said Notice of termination was mailed addressed to Southern Realty Company, Inc., Post Office Box 666, Sutton, West Virginia, 26601, postmarked “Charleston, West Virginia, October 10, 1968” and stamped “Certified Mail . . . Return Receipt Requested”. The letter was returned to the Respondent with a rubber stamp imprinted thereon by the postoffice reading: “Return to writer . . . reason checked . . . unclaimed”.
The only issue before the Court is whether said Lease was properly terminated by written Notice, and if so, no liability would be incurred by the Respondent for any rentals after November 15, 1968. Mr. O. L. Given, President of Southern Realty Company, Inc., testified that the letter was never received by the Company, although it was correctly addressed and that he visited the postoffice practically daily on or about the time of the postmark of the letter. Mr. Given further testified that possession of the premises was not surrendered to the Lessor because the Lessee permitted an old safe to remain on the premises and the failure of the Lessee to surrender the keys. He was, however, notified in December, 1968, that the tenant had moved from the property when he received a telephone call about terminating the utility services. However, Mr. Given was aware that the Department of Welfare was no longer using the premises in the conduct of its business and had removed its furniture and other personal property therefrom.
The witnesses for the Respondent testified rather clearly and persuasively that proper procedures were followed in terminating the Lease by written Notice and that a large safe on the premises was not the property of the State and had been furnished by the former owner for the use and convenience of the tenant. The State witnesses were unable to testify from personal knowledge whether the keys to the premises were delivered to the Lessor.
According to the testimony presented at the hearing, it is the finding of this Court that the Lease was properly terminated in accordance with its terms and provisions and that the Lessor was aware that the premises had been vacated. Retention of the keys or some of the keys to the property, in our opinion, does not constitute an unlawful withholding of the premises especially when the Lessor had access to the property through other available keys at the time of the tenant’s removal. The Lessee, having complied with the terms of the Lease by *16 sending the requisite written Notice, we cannot justify a finding of a moral obligation on the part of the State to pay rent after the date of termination because of a failure to remove a safe from the premises that was not owned by the State and the symbolic surrender of the premises by delivering all of the outstanding keys thereto.
The return of the termination Notice by the postoffice as “unclaimed” was not explained by the evidence and, in our opinion, the Respondent was under no duty to guarantee the delivery of the Notice if it complied with the provision of the Lease requiring it to send said Notice by certified mail. If the Notice was not delivered because of the negligence of the postoffice, the Claimant’s damages, if any, might be recovered as a postal claim.
On the foregoing findings of fact, the claim is denied.
Claim disallowed.